ORDERED in the Southern District of Florida on 02/07/07



Raymond B. Ray, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No.: 06-14636-BKC-RBR
Chapter 13

In re:

Jeff M. Weinraub and
Enid Weinraub,
_____Debtors./

### AMENDED[1] ORDER GRANTING DEBTORS MOTION TO WAIVE §362(I)

THIS MATTER came before the Court on September 22, 2006 upon Debtors Motion to Waive the Requirements of §362(I) And Confirm the Automatic Stay is in effect as to Harry Winston, Trustee of the Weinraub IV Trust (hereafter "Winston") and To Issue An Order To the Clerk of The Court Staying It With Complying With 11 U.S.C. §362(I)(4)(B) (C.P.5) and the responses thereto (C.P. 45,48,56,98,99). The Court Waives the requirements of §362(I) for the reasons that follow.

---

[1] This amended order corrects typographical errors on pages 7,10,15 and 18.

**Factual Background**:

The Weinraubs have lived in their home since 1997. During the summer of 2005 the Weinraubs, faced with personal problems and financial difficulties, fell behind on their mortgage. A foreclosure action was instituted by the Mortgagee, Case No.: 05-6414 Broward County Florida. The Weinraubs in an attempt to keep their home looked for lenders. They eventually met with Winston and entered into a transaction.

As a result of that transaction the Weinraubs were sued in state court by Winston. Winston proceeded in state court and obtained a Default Final Judgement of Possession and a Writ of eviction.

In an effort to stay the state court proceeding the Weinraubs filed two (2) bankruptcy proceedings under Chapter 13. In both proceedings the Weinraubs were represented by the same attorney.[2] The representation was totally inadequate and both cases were dismissed. The Weinraubs have now filed, this case, their third bankruptcy proceeding with a new attorney.

This case was filed, along with an adversary complaint. In the adversary (06-01998) the Weinraubs are challenging the validity of the ownership interest, in their homestead, asserted by Winston and the other defendants. The basis for this claim is that Winston disguised a consumer credit transaction within a plethora of documents, which has been termed by Winston a "sale and lease back" agreement.

The Weinraubs assert in their adversary complaint that the transaction really was a consumer credit transaction involving a loan of money and a security interest in their

---

[2] This attorney is no longer authorised to practice in the United States Bankruptcy Courts for the Southern District of Florida. See *in re: Layne*, No. 05-23122 C.P. 54.

2

home. They further claim that such a transaction falls within the scope of the *Truth In Lending Act, 15 U.S.C. §1601 et seq.* (hereafter "TILA"). The Weinraubs claim the transaction between them and Winston was part of a predatory lending scheme, to which they fell victim. They further assert that this scheme would provide an unreasonably large and possibly usurious return to Winston. As such, the Weinraubs seek to exercise a right of rescission under TILA, among other remedies, arising under Title 15 of the United States Code and applicable Florida usury laws

The instant bankruptcy case was filed on September 20, 2006, by new counsel, in an attempt to prevent the eviction of the Weinraubs and undo the allegedly predatory actions taken by Winston.

## **Conclusions of Law:**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. 1334(b). This is a core proceeding under 28 U.S.C. 157(b)(2)(G).

Section 11 U.S.C. §362(l)[3] requires a debtor who is a tenant in a residential property to file a certification with the petition that:

> (A) under nonbankruptcy law applicable in the jurisdiction, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after that judgment for possession was entered; and

---

[3] All future references to statutory sections shall be to 11 U.S.C.101 et. Seq. Unless otherwise stated.

3

> (B) the debtor has deposited with the clerk of the court, any rent that would become due during the 30-day period after the filing of the bankruptcy petition.[4]

If these certifications are not filed, then §362(b)(22) operates immediately. It removes the stay protection of §362(a)(3) and allows for the continuation of an eviction action if the landlord has obtained a judgment for possession before filing of the bankruptcy petition. See §362(b)(22).

The issues before the Court relating to the above provisions, are: (i) whether the Court has the power to waive the requirements of §362(l) and re-impose the automatic stay; and (ii) is the Court barred from hearing the merits of the case because of *res judicata* or *Rooker-Feldman*.

There are two justifications upon which the Court concludes that it does indeed posses the power to waive the requirements of §362(l) and re-impose the automatic stay. First, the text of §362 implies that the Court has the power to waive certain sections and requirements listed. Second, the general equitable powers of the Court are not limited to prevent it from waiving §362(l). The Court also holds that *res judicata* and *Rooker-Feldman* are not applicable to the merits of this case.

---

[4] A possible alternative, other debtors may pursue when they may have a valid TILA claim, is to certify under §362(l). Their certification would state that "the nonbankruptcy law applicable" in the jurisdiction would be TILA and the cure of the default would be rescission. If the transaction was rescinded, the entire default that gave rise to the judgment for possession would be cured.

## I. The Text of §362 Implies That the Court Has the Power to Waive Certain Sections and Requirements Contained Within §362.

Section §362 has four provisions which are relevant to this case. First, §362(a) imposes a stay, except as provided in subsection (b). See §362(a). Subsection (b) lists several exceptions to the stay imposed by subsection (a), including §362(b)(22) which operates as described above. Section 362(b)(22) is subject to §362(l), which permits the reimposition of the stay for 30 days if there is proper certification. See §362(l). There was no certification filed in this case. The last provision of relevance is §362(o), which states in its entirety: "[t]he exercise of rights not subject to the stay arising under subsection (a) pursuant to paragraph (6),(7),(17), or (27) of subsection (b) shall not be stayed by any order of a court or administrative agency in any proceeding under this title."

The Court is also cognizant of the rule of construction explained by Justice Frankfurter in *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270 (1956), he stated:

> "We are not at liberty to construe any statute so as to deny effect to any part of its language. It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word. As early as in Bacon's Abridgment, sect. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.' This rule has been repeated innumerable times. Another rule equally recognized is that every part of a statute must be construed in connection with the whole, so as to make all the parts harmonize, if possible, and give meaning to each." *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 298 (1956)(J. Frankfurter dissent)(citing *Mkt. Co. v. Hoffman*, 101 U.S. 112, 115-16 (1879).

The inclusion of §362(o) sets the limits on what actions a bankruptcy court may take when it comes to modifying or staying the exercise of rights listed in §362(b). Furthermore, the Court is bound to interpret the Bankruptcy Code according to the rule of construction articulated by Justice Frankfurter. Consequently, if a bankruptcy court was not permitted to stay the operation of any of the sections of §362(b), then §362(o) would become superfluous. Under such a reading there would have been no need for Congress to explicitly state that §362(b)(6), (7), (17), or (27) cannot be stayed by order of a court. This reading of the statute would violate "the cardinal rule of statutory construction". *See Mastro Plastics Corp. supra.*

The only reading of §362 that gives effect to §362(o) is to acknowledge that the Court has the power to stay any of the parts of §362(b) that are not specifically listed in §362(o). This reading explains why Congress saw it necessary to limit the power of the court and included §362(o) in the 2005 amendments to the Bankruptcy Code.

Therefore, there is a clear textual basis that the Court may stay any of the permitted actions found in §362(b) that are not included in §362(o). This ability to stay §362(b)(22) permits the Court to waive the requirements of §362(l), because the power to re-impose the stay over §362(b)(22) would be meaningless if the court could not also waive the requirements of §362(l). This is logical because §362(l) is an effectuating provision of §362(b)(22). Since the Court can stay §362(b)(22) it is required that its powers extend to waiving the application of provisions that effectuate §362(b)(22); included in those provisions is §362(l).

## II. The General Equitable Powers of The Court Are Not Limited to Prevent it From Waiving the Requirements of §362(l) and Re-Imposing The Automatic Stay.

The Court also finds that its inherent equitable powers provide another basis to waive the requirements of §362(l) and re-impose the stay over §362(b)(22). At the outset, it is noted that §105(a) is a grant of equitable powers. *See e.g. United States v. Sanford*, 979 F.2d 1511, 1514 (11th Cir. 1992).

The Supreme Court stated, when interpreting §1129(b), that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 208 (1988); *accord United States v. Sanford*, 979 F.2d 1511, 1513-14 (11th Cir. 1992). The Court's action in waiving §362(l) and re-imposing the stay is an action that falls within the exercise of equity powers within the confines of the Bankruptcy Code. The language of §362, as discussed above, supports a finding that the text contemplates the court having the power to waive §362(l) and re-impose the stay.

Assuming *arguendo* that the text as read above is insufficient to support this finding, then silence of the Code regarding waiver of §362(l) and re-imposition of the stay does not mean that such action would be contrary to the "confines" of the Code. Silence is hardly a confine, it is an ambiguity which is precisely the situation where a court should interject its equitable powers. *See Porter v. Warner Holding Co.*, 328 U.S. 395, 398,(1946) ("[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.");*see also Huie v. Bowen*, 788 F.2d 698, 705 (11th Cir. 1986).

(stating that a court should resolve "any ambiguities in the statute in favor of the interpretation that permits federal courts to exercise fully their traditional equity powers.")

The Court notes that the use of its equitable powers to waive §362(l) and re-impose the stay would not affect or alter the substantive rights of the parties. Rather, the Court is merely exercising its equitable powers in a limited and threshold manner so that it may hear the merits of this case. Such an exercise of equitable power is especially appropriate when the provision involved is an inherently equitable one, such as the automatic stay. *See Elder-Beerman Stores Corp. v. Thomasville Furniture Indus.*, 206 B.R. 142 (Bankr. S.D. Ohio 1997) (recognizing "that automatic stay proceedings, though similar to preliminary injunction hearings in their equitable nature, are not governed by the same considerations...").

Furthermore, there is a distinction between the waiver of a Code provision and an action contrary to the language of the Code. The waiver of the requirements of a provision to maintain the status quo, where the Code is silently ambiguous, is different then acting contrary to an express requirement made by the Code. Several cases have held that courts may not use their equitable power in contravention of a Code provision. *See e.g. In re: Momentum Mfg. Co.*, 25 F.3d 1132, 1136 (2d Cir. 1994)(noting that "a bankruptcy court may not exercise this in contravention of the Code."); *United States v. Sanford*, 979 F.2d 1511, 1514 (11th Cir. 1992)(stating that the "Bankruptcy Court may not use its equitable power against the dictate of... any section of the Bankruptcy Code. On the contrary, this equitable power must and can only be exercised within the confines of the Bankruptcy Code.")(internal quotations; citations omitted).

The bankruptcy court in *Sanford* was deemed to have exceeded its powers by reducing the amount of penalties imposed on the debtor by the Internal Revenue Code. *See id.* According to the Internal Revenue Code these penalties could not be partially reduced. *See id.* at 1513.

The action disapproved of in *Sanford* is fundamentally different from what the Court is permitting in this case. Section 502 details how the bankruptcy court is to interact with non-bankruptcy law, in terms of what claims are allowable. It is, without doubt, an improper use of equitable powers for a bankruptcy court to change or modify non-bankruptcy law. To do so contravenes the permitted method of interaction between the bankruptcy court and non-bankruptcy law as contemplated by §502(b). However, the waiver of §362(l) and reimposition of the stay is not an action in contravention of the Code. Rather, it is the exercise of equitable power, with respect to an inherently equitable function in the face of a statute, that is arguably supportive of this exercise of equitable power and is at worst silent on the right of the Court to so act.

Additionally, the waiver of §362(l) and re-imposition of the stay is precisely the type of equitable activity that promotes the purpose of the automatic stay. As such, the Court is acting within its §105 mandate to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." *See* §105(a); *see also In re: Momentum Mfg. Co.*, 25 F.3d at 1136 (explaining "that §105(a) should be construed liberally to enjoin [actions] that might impede the reorganization process.")(brackets in original; internal quotations and citations omitted).

The automatic stay is the most important protection afforded a debtor; it is intended to give a debtor the chance to catch his breath, collect all of the proceedings against him

9

in one place and proceed to reorganize his affairs. See *ACandS, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 258 (3d Cir. 2006) (holding " that the automatic stay provision of the Bankruptcy Code promotes a public policy sufficient to preclude enforcement of an award that violates its terms or interferes with its purposes); See also, *Cavanaugh v. Conseco Fin. Servicing Corp. (In re Cavanaugh)*, 271 B.R. 414, 424 (Bankr. D. Mass 2001)(noting that "the automatic stay is the single most important protection afforded to debtors by the Bankruptcy Code."). The waiver of §362(l) allows the operation of §362(a) to have its intended effect and permit the debtor the opportunity to reorganize his affairs. Therefore the Court is using its §105(a) power to carry out the letter and purpose of §362(a).

Based on the foregoing, the Court holds that the waiver of §362(l) and the reimposition of the automatic stay: (i) is supported by the text of §362 (ii) is an equitable action, which falls within the scope of the Court's equitable power and; (iii) furthers the purpose of the automatic stay. The Court will now turn to the second issue dealing with Winston's assertions of *res judicata* and *Rooker-Feldman*.

### III. The Truth In Lending Claims Are Not Barred By *Res Judicata*

Winston asserts that even if this Court has the equitable power to waive §362(l) and re-impose the stay, the Court should not do so because of the doctrine of *res judicata*. The Court disagrees with this argument, *res judicata* is inapplicable because the TILA claims were not compulsory during the state court proceedings.

The law is well settled that compulsory counterclaims, which are not raised in a prior proceeding are waived. See *Montgomery Ward Dev. Corp. v. Juster,* 932 F.2d

10

1378,1380-81 (11th Cir. 1991); See *Yost v. American National Bank*, 570 So. 2d 350, 352 (Fla. App. 1990)(holding that under Florida law a failure to raise a compulsory counterclaim in the first lawsuit results in a waiver of that claim). Furthermore, in the Eleventh Circuit, when a federal court is determining the preclusive effect of a state court judgment it must look to the law of the state that issued the judgment for any preclusive effect. See *Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d at 1380; *Daniels v. Funding USA, Inc. (In re: Daniels)*, 350 B.R. 619, 623 (Bankr. S.D. Fla, 2006). The Court notes that the Florida Rule of Civil Procedure 1.170(a) incorporates *Rule 13(a) of the Federal Rules of Civil Procedure*. See *Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d at 1380.

The crux of the issue thus becomes whether the TILA claims that the Debtors now seek to assert were compulsory counterclaims to the eviction proceedings that have been reduced to final judgment in state court. The Court holds that they were not.

Most recently, this exact issue, under very similar circumstances, was decided by Judge Isicoff, in *Daniels v. USA Funding Corp. See Daniels v. Funding USA, Inc. (In re: Daniels)*, 350 B.R. 619, 623 (Bankr. S.D. Fla, 2006). Judge Isicoff determined that just because TILA authorizes a borrower to raise TILA claims in state court, it is not required that the borrower do so. See *id.* at 625-26. The court in *Daniels* followed the determination in *In re: Tomasevic* that TILA rescission claims go "to the making of the loan, rather than a dispute as to the obligations under the loan as was the issue in the state court foreclosure action. Because the claims are not the same, res judicata does not bar this Truth in Lending claim." *In re: Tomasevic* 275 B.R. 86, 101 (Bankr. M.D.

11

Fla. 2001). This conclusion has been reached in courts all around the country. Notably in *Brady v. C.F. Shwartz Motor Co. Inc*, the district court concluded that the

> sole connection between the TILA claim and the debt claim is the execution of the sale contract. Resolution of the debt claim, however, does not bear a logical relationship to the resolution of the Plaintiff's TILA claims because the validity or enforceability of the underlying sales contract does not affect Defendant's compliance or non-compliance with the TILA disclosure requirements. *Brady v. C.F. Shwartz Motor Co. Inc.*, 723 F.Supp. 1045,1050 (D.Del. 1989); accord *Walker v. Contimortgage (In re Walker)*, 232 B.R. 725,734 (Bankr. N.D. Ill 1999).

The above findings are also supported by Florida state court decisions. Although it does not appear that any state court has addressed this precise issue. One case that has come close is *Whigum v. Heilg-Myers Furniture Inc*. In that case the court deemed actions on a debt to be permissive counterclaims to an action under Florida Consumer Collection Practices Act. See *Whigum v. Helig-Myers Furniture Inc*. 682 So. 2d 643, 646 (Fla. Dist. Ct. App. 1996). The court in reaching its conclusion noted that: (i) the Florida rule of Civil Procedure 1.170(a) was identical to Fed. R. Civ. P. 13(a); (ii) the policies in the federal consumer statutes are generally the same as those in the Florida statutes; (iii) the characteristics that determine whether a counterclaim is permissive or compulsory "dictate [the] conclusion that the proposed counterclaim is permissive." See *id.* at 646-47 (citing as support cases that held "that an action on a debt was not a compulsory counterclaim to an action under the Federal Truth in Lending Act."). Even though Whigum was not the identical procedural issue, it would stand that the similar result would be reached under Florida law for the issue of the nature of a TILA counterclaim with respect to a state court debt claim.

Based on the above, the Court adopts the determination in *Daniels* and finds that Weinraubs TILA claims, were not compulsory counterclaims. Therefore, they are not barred by *res judicata*.

### IV. *Rooker-Feldman* is Inapplicable To The Debtors TILA Claims

Winston contends that the Court is barred from waiving §362(l) and allowing the Debtors to raise their TILA claims because of the *Rooker-Feldman* Doctrine. Winston asserts that the default eviction judgment (*see* Memorandum of Law in Opposition Filed by Creditor Florida Foreclosures Alternative LLC, 06-14636-BKC-RBR, C.P.48 at Exhibit A) bars any adjudication of any TILA claims held by the Debtors. The Court disagrees with Winston on three grounds: (a) *Rooker-Feldman* only bars claims of legal injury caused by a state court judgment, not injuries caused by an adverse party; (b) Winston's argument does not pass the "inextricably intertwined" test for application of *Rooker-Feldman*; and (c) there is an exception to *Rooker-Feldman* for bankruptcy courts.

*Rooker-Feldman* is a doctrine developed by the Supreme Court. Succinctly stated, "*Rooker-Feldman* is not simply preclusion by another name. The doctrine applies only in limited circumstances, where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance v. Dennis*, 126 S. Ct. 1198, 1202 (2006)[5].

---

[5] The Court notes that Justice Stevens has, at least twice, explicitly declared the death of the *Rooker-Feldman* doctrine. *See Marshall v. Marshall*, 126 S.Ct. 1735, 1752 (2006)(stating that he would "provide the creature [the probate exception] with a decent burial in a grave adjacent to the resting place of the *Rooker-Feldman* doctrine.); *Lance v.*

13

The Ninth Circuit has determined that *Rooker-Feldman* does not apply where "the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by an adverse party..." *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003); *see also Garry v. Geils*, 82 F.3d 1362,1366-67(7th Cir. 1997)("[t]hus the distinction between a federal claim alleging injury caused by a state court judgment (necessarily raising the *Rooker-Feldman* doctrine) and a federal claim alleging a prior injury that a state court failed to remedy (raising a potential *res judicata* problem but not *Rooker-Feldman*) has been recognized in this circuit at least since our decision in GASH."). Under the analysis conducted in Part III, *supra*, the Court has determined that the TILA claims are separate and unique from the eviction proceedings. The same reasoning applies with respect to *Rooker-Feldman*. The TILA claims, if valid, are injuries caused by the actions or omissions of Winston, namely, the failure to make the proper disclosures under TILA. Therefore *Rooker-Feldman* is inapplicable to the Debtors TILA claims.

Even if this issue is approached from the "inextricably intertwined" test, the result is the same. The inextricably intertwined test determines the applicability of *Rooker-Feldman* by examining, (i) whether the claim was adjudicated by the state court and (ii) whether the claim was inextricably intertwined with the state court judgment. *See Harper v. Chase Manhattan Bank*, 138 Fed. Appx. 130, 132 (11th Cir. 2005)(citing *Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001)). It is undisputed that the

---

*Dennis*, 126 S.Ct. 1198,1203 (2006)(noting that in " *Exxon Mobil Corp. V. Saudi Basic Industries Corp.,* 544 U.S.280 (2005), the Court finally interred the so-called 'Rooker-Feldman' Doctrine.").

14

TILA claim was not raised at the state court proceedings therefore it could not have been adjudicated. However even if it was, if *Rooker-Feldman* is to apply it must be determined that the TILA claims were "inextricably intertwined" with the default eviction judgment obtained in the state court proceeding.

The Court finds that the TILA claims are not "inextricably intertwined" with the default state court eviction proceeding. Long ago, the Supreme Court addressed the issue of the effect of a default judgment between parties and its effect on another action between the same parties. The Court stated:

> "[o]n principle, a point not in litigation in one action cannot be received as conclusively settled in any subsequent action upon a different cause, because it might have been determined in the first action.
>
> Various considerations, other than the actual merits, may govern a party in bringing forward grounds of recovery or defense in one action, which may not exist in another action upon different demand, such as the smallness of amount or the value of the property in controversy, the difficulty of obtaining the necessary evidence, the expense of litigation, and his own situation at the time. A party acting upon considerations like these **ought not to be precluded from contesting in a subsequent action other demands arising out of the same transaction**. A judgment by default only admits for the purpose of the action the legality of the demand or claim in suit: it does not make the allegations of the declaration or complaint evidence in an action upon a different claim" *Cromwell v. County of SAC*, 94 U.S. 351, 356 (1876)(emphasis added).

Incorporating the previous analysis that TILA claims are separate and distinct from the eviction proceeding. Then based upon the principal enunciated in *Cromwell* the Court concludes that the TILA claims are not intertwined. This is because, the TILA claims go to whether there was compliance with the disclosure requirements of the

federal statute; whereas, the eviction proceeding dealt with the question of whether the payments under the executed documents had been made. *See Brady v. C.F. Schwartz Motor Co Inc.*, 723 F. Supp. 1045,1050 (D. Del. 1989). The TILA claims are sufficiently untwined from the default eviction proceeding to avoid the application of *Rooker-Feldman*.

Finally, the Court holds that *Rooker-Feldman* is inapplicable to bankruptcy courts. The Ninth Circuit has found "two particularly notable statutory exceptions" to *Rooker-Feldman*, " First a federal district court has original jurisdiction to entertain petitions for habeus corpus... Second, a federal bankruptcy court has original jurisdiction under which it is empowered to avoid state judgments, to modify them, and to discharge them." *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2002)(internal citations and quotation omitted); *accord Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1079 (9th Cir. 2000)(conducting an extensive analysis of the reasons why bankruptcy proceedings are exempt from *Rooker-Feldman*).

In *Bozich v. Mattschull (In re: Chin USA, Inc.)*, the bankruptcy court denied the defendants' motion to dismiss counts 1 and 2 of the adversary based on *Rooker-Feldman* . *Bozich v. Mattschull (In re: Chin USA, Inc.)*, 327 B.R. 325,333 (Bankr. N.D. III, 2005). The bankruptcy court adopted the bankruptcy exemption to *Rooker-feldman*. *See id.* at 336. It noted that *Rooker-Feldman* had no application in that case "because the statutory underpinnings for the doctrine [were] not present..." *See id*.

The Debtors TILA claim, if one exits, was not litigated in the default state court eviction proceeding. Furthermore, any TILA claim would have accrued when the documents were signed without the requisite disclosures. *See 15 U.S.C. §1601 et. seq.*

16

Therefore, this claim would pass by the operation of §541 into the estate of the debtor. See *In re Ross,* No. 05-42544 2006 Bankr. LEXIS 191, at *11 (finding that TILA claims were not exempt as part of homestead exemption and were part of the estate in a chapter 7 proceeding); *Rowland v. Novus Fin. Corp.*, 949 F.Supp.1447,1453 (D. Hi 1996)( stating that a "TILA cause of action belongs to the bankruptcy estate.").[6] Since any TILA claim that accrued before the filing would fall within the purview of the estate it follows that it would be within the bankruptcy exception to *Rooker-Feldman*.

Based on the foregoing, the Court finds *Rooker-Feldman* to be inapplicable to the Debtors TILA claims because :(i) the TILA claims, if valid, are a result of actions or omissions of Winston not due to the state court eviction judgment; (ii) the TILA claims do not meet the "inextricably intertwined" test; and (iii) the TILA claims are properly part of the estate and therefore fall into the bankruptcy exception to *Rooker-Feldman*.

Based on the foregoing it is, hereby,

**ORDERED AND ADJUDGED** that

1. The requirements of 11 U.S.C. §362(l) are waived with respect to the Debtors.

2. The Clerk of the Court is directed to refrain from issuing any notice required by §362(l), with respect to this case.

---

[6] Since this is a chapter 13 proceeding, the Debtor retains standing to pursue legal action on behalf of the estate. *See e.g. Crosby v. Monroe County*, 394 F.3d 1328, 1331 (11th Cir. 2004)(finding that a chapter 13 debtor has standing to pursue all legal claims on behalf of the estate).

3. 11 U.S.C.§362(a) is declared to be applicable and in effect absent further order of the Court.

4. The operation of 11 U.S.C.§362(b)(22) is stayed absent further order of the Court.

Copies to:
Sherri Simpson, Esq.
Arthur Neiwirth, Esq.